**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-00299

LORRIE SMITH and
JOHN SMITH and LORRIE SMITH,
jointly as the Guardians and
next friends of A. S., a minor,

       Plaintiffs,

v.

INSTANT BRANDS INC.,

       Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

## <u>PARTIES</u>

1.    Plaintiff Lorrie Smith resides in Castle Rock, Douglas County, Colorado, and is a citizen of the state of Colorado.

2.    Plaintiff John Smith resides in Castle Rock, Douglas County, Colorado, and is a citizen of the state of Colorado.

3.    A. S., a minor, resides in Castle Rock, Douglas County, Colorado, and is a citizen of the state of Colorado.

4.    At all times relevant hereto, Plaintiffs John Smith and Lorrie Smith were and are legally married to each other and reside together as husband and wife in Douglas County, Colorado.

5.    A. S., a minor, is the daughter of Plaintiffs John Smith and Lorrie Smith.

6.     A. S., a minor, was born on April 10. 2004, and is presently 16 years old.

7.     Defendant Instant Brands Inc., is a Canadian corporation with its principal place of business at 135 Michael Cowpland Drive, Suite 120, Kanata, ON, K2M 2E9, Canada, and a mailing address of Suite 383, 11-300 Earl Grey Drive, Ottawa, Ontario, K2T 1C1, Canada, and as such is deemed to be a citizen of the Country of Canada.

8.     Defendant Instant Brands Inc., is not registered with the office of the Colorado Secretary of State to do business in the State of Colorado.

9.     Defendant Instant Brands Inc., does business as Instant Pot Company.

10.     Defendant Instant Brands Inc. was formerly known as Double Insight Inc., having changed its name from Double Insight Inc. to Instant Brands Inc. on May 5, 2018.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as the parties are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

12.     Defendant Instant Brands Inc. distributed its products, known as various models of the Instant Pot®, to various retailers in the State of Colorado, including King Soopers, Walmart, Target, and Bed Bath and Beyond, who sold its products to consumers in the State of Colorado.

13.     Defendant Instant Brands Inc. marketed its products, known as various models of the Instant Pot®, on the internet, expecting and knowing that some of those products would be purchased by consumers in the State of Colorado.

2

14.     Defendant Instant Brands Inc. distributed it products, known as various models of the Instant Pot®, to distributors located in the United States, knowing that some of those products would be purchased by, and delivered to, consumers in the State of Colorado.

15.     At all times relevant hereto, Defendant Instant Brands Inc. advertised, promoted, marketed, sold and/or distributed the defective Instant Pot product that is the subject of this civil action throughout the United States, including the State of Colorado.

16.     Defendant Instant Brands Inc. is subject to the *in personam* jurisdiction of this Court, as it did and continues to do business within the State of Colorado and has continuous and systematic contacts with the State of Colorado and has consented to jurisdiction in the State of Colorado.

17.     Defendant Instant Brands Inc. is a corporation and deemed to reside in a judicial district in which it is subject to personal jurisdiction.  28 U.S.C. §1391(c).

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (c), as the Plaintiffs reside in Douglas County, Colorado, within the jurisdictional boundaries of this United States District Court, and a substantial part of the events giving rise to this claim occurred in Douglas County, Colorado.

## **FACTUAL ALLEGATIONS**

19.     At all times relevant to the issues alleged in this Complaint Defendant Instant Brands Inc., f/k/a Double Insight, Inc., doing business as Instant Pot Company [hereinafter "Instant Brands"] was engaged in the business of designing, manufacturing, importing, marketing, distributing, selling, and/or introducing into interstate commerce,

including to the State of Colorado, either directly or indirectly through third parties or related entities, the Instant Pot® Programmable Electric Pressure Cooker, Model IP-LUX80 [hereinafter "Instant Pot®"], that is in issue in this civil action.

20.     Defendant Instant Brands Inc. is the same corporate entity that was formerly known as Double Insight Inc.

21.     Double Insight, Inc. did business as Instant Pot Company.

22.     Under each corporate name, Instant Brands Inc. and Double Insight Inc., this entity has at times held itself out as doing business as "Instant Pot Company."

23.     Instant Brands Inc. claims that it "was founded in 2009 by a team of Canadian technology veterans".

24.     Instant Brands Inc. claims Dr. Robert Wang was the "founder" of Instant Brands Inc.

25.     Robert Wang, a present or former officer, employee, and/or owner of Instant Brands Inc. claims to be the "inventor" of the Instant Pot®.

26.     Defendant Instant Brands Inc. itself, or through third parties acting at its request, designed the Instant Pot® that is in issue in this civil action.

27.     Defendant Instant Brands Inc. itself, or through third parties acting at its request, manufactured the Instant Pot® that is in issue in this civil action.

28.     Defendant Instant Brands Inc. itself, or through third parties acting at its request, imported the Instant Pot® that is in issue in this civil action.

29.     Defendant Instant Brands Inc. itself, or through third parties acting at its request, distributed the Instant Pot® that is in issue in this civil action.

4

30.     Defendant Instant Brands Inc. itself, or through third parties acting at its request, sold the Instant Pot® that is in issue in this civil action.

31.     Defendant Instant Brands Inc. itself, or through third parties acting at its request, marketed the Instant Pot® that is in issue in this civil action.

32.     Defendant Instant Brands Inc. itself, or through third parties acting at its request, introduced into interstate commerce, and into the State of Colorado, the Instant Pot® that is in issue in this civil action.

33.     Upon information and belief, Guangdong Midea Consumer Electric Manufacturing Co Ltd., was the manufacturer of the Instant Pot® that is the subject of this civil action.

34.     Guangdong Midea Consumer Electric Manufacturing Co Ltd., is a Chinese Corporation, with its principal place of business located in Beijiao Shunde Foshan, Guangdong 528311 China, and as such is deemed to be a citizen of the country of China.

35.     Guangdong Midea Consumer Electric Manufacturing Co Ltd. is not registered with the office of the Colorado Secretary of State to do business in the State of Colorado.

36.     Guangdong Midea Consumer Electric Manufacturing Co Ltd., is not subject to the jurisdiction of this United States District Court.  [*See*: OPINION and ORDER by Hon. Marcia S. Krieger entered on 02/21/2020, *Cooper v. Instant Brands Inc. et al.*, U.S. Dist. Court – Dist. of Colorado, Case 1:18-cv-02611-MSK-STV, Doc. 115.]

37.     Pursuant to C.R.S. §13-21-401, Defendant Instant Brands Inc., f/k/a Double Insight Inc., is deemed to be the "manufacturer" of the Instant Pot® that is the subject of this civil action.

38.     On March 9, 2010, the Word Mark "Instant Pot®" [i.e., Trademark] was registered with the United States Patent and Trademark Office listing Double Insight Inc. Corporation Canada as the Owner (Registrant), Registration Number 3887207.

39.     Instant Brands Inc. has stated in information published on its Internet website, "In late 2010, after eighteen grueling months of research, design and development they introduced the Instant Pot® CSG Multi-Use Programmable Pressure Cooker." https://instantappliances.com/about-instant-brands-inc-instant-pot/

40.     Instant Brands Inc. has stated in information published on its Internet website, "Each subsequent Instant Pot® product introduction has raised the bar on functionality, user-friendliness and safety." https://instantpotmy.com/company/

41.     Instant Brands Inc. has stated in information published on its Internet website, "In 2012 the company launched the Instant Pot® Lux 6-in-1 Multi-Use Programmable Pressure Cooker, 6 quart – which was the most advanced pressure cooker available on the market at the time.  The Lux 6-in-1 quickly became the category best seller on Amazon, leading the company to introduce the Lux 6-in-1, 5 quart version of the product, and later the Instant Pot® Duo 7-in-1 Multi-Use Programmable Pressure Cooker." https://instantappliances.com/about-instant-brands-inc-instant-pot/

42.     The Instant Pot® brand is the property of Defendant Instant Brands Inc.

43.     Some of the design and specifications for the Instant Pot® that is in issue in this civil action were provided to Guangdong Midea Consumer Electric Manufacturing Co Ltd., by or at the request or direction of Defendant Instant Brands.

44.     On September 27, 2013, the Instant Pot® Programmable Electric Pressure Cooker was issued an Underwriters Laboratories Listing, UL 9H06 E214884.

45.     The Underwriters Laboratories Listing [UL Listing] means, in part, that when the Instant Pot® product is under pressure the cover [lid] should not be able to be opened by applying a rotational force of 100 pounds (445 N), with the force to be applied gradually.

46.     After the Instant Pot® Electric Pressure Cooker began to be sold to consumers in the United States, Instant Brands, and various retailers and sellers of the Instant Pot®, began to receive notice of claims by consumers that the lid of the product opened while under pressure, causing burn injuries to users of the product.

47.     Sometime on or before October 26, 2017, an Instant Pot Electric Pressure Cooker with a "new construction of Locking Pin Assembly", was submitted by the manufacturer to UL for examination and testing.

48.     Sometime on or before October 26, 2017, pursuant to UL Standard 136, UL conducted Cover Opening and Locking Mechanism Operation tests of an Instant Pot® Electric Pressure Cooker with the new construction of Locking Pin Assembly.

49.     On October 26, 2017, after conducting Cover Opening and Locking Mechanism Operation tests of an Instant Pot® Electric Pressure Cooker with the new

7

construction of Locking Pin Assembly, UL issued a "New" certification of the UL listing for the Instant Pot® pressure cooker products.

50.     After UL issued the "New" certification of the UL listing for the Instant Pot® pressure cooker products with the new construction of Locking Pin Assembly, Instant Brands did not recall any of the Instant Pot® pressure cooker products that had the previous design of locking pin assembly.

51.     After UL issued the "New" certification of the UL listing for the Instant Pot® pressure cooker products with the new construction of Locking Pin Assembly, Instant Brands continued to distribute and/or sell Instant Pot® pressure cooker products that had the previous design of locking pin assembly.

52.     Pursuant to a contract with Defendant Instant Brands, in March of 2018 Guangdong Midea Consumer Electric Manufacturing Co Ltd., manufactured the Instant Pot® that is in issue in this civil action.

53.     The Instant Pot® that is in issue in this civil action does not have the new construction of Locking Pin Assembly that had been certified by UL on October 26, 2017.

54.     After Instant Pot® Electric Pressure Cookers with the new construction of Locking Pin Assembly began to be sold to consumers in the United States, Instant Brands, and various retailers and sellers of the Instant Pot®, began to receive notice of claims by consumers that the lid of the product with the new Locking Pin Assembly opened while under pressure, causing burn injuries to users of the product.

55.    Pursuant to a contract with Defendant Instant Brands, Guangdong Midea Consumer Electric Manufacturing Co Ltd., labeled and packaged the Instant Pot® that is in issue in this civil action.

56.    The English language information that appears on the labeling and packaging of the Instant Pot® that is in issue in this civil action was written or authored by, or with the approval of, Defendant Instant Brands.

57.    The English language information that appears on the labeling and packaging of the Instant Pot® that is in issue in this civil action was provided to Guangdong Midea Consumer Electric Manufacturing Co Ltd. for use with the subject Instant Pot®, by, or with the approval of, Defendant Instant Brands.

58.    Pursuant to a contract with Defendant Instant Brands, Guangdong Midea Consumer Electric Manufacturing Co Ltd., included a User Manual in the packaging of the Instant Pot® that is in issue in this civil action.

59.    The English language information that appears in the User Manual for the Instant Pot® that is in issue in this civil action was written or authored by, or with the approval of, Defendant Instant Brands.

60.    The English language information that appears in the User Manual for the Instant Pot® that is in issue in this civil action was provided to Guangdong Midea Consumer Electric Manufacturing Co Ltd., by or with the approval of Defendant Instant Brands.

61.     Guangdong Midea Consumer Electric Manufacturing Co Ltd. does not have the right to manufacture Instant Pot® branded products for anyone other than Defendant Instant Brands Inc., or others whom Instant Brands may so designate.

62.     Guangdong Midea Consumer Electric Manufacturing Co Ltd. does not have the right to deliver manufactured Instant Pot® branded products to anyone other than Defendant Instant Brands Inc., or others whom Instant Brands may direct or designate it to deliver those products to on behalf of Instant Bands.

63.     Defendant Instant Brands Inc. did not do quality assurance inspection and testing prior to accepting delivery of Instant Pot® products from Defendant Guangdong Midea Consumer Electric Manufacturing Co Ltd. that were intended to be sold by King Soopers in the State of Colorado.

64.     The Instant Pot® purchased by Plaintiff Lorrie Smith was designed, manufactured, imported, introduced into interstate commerce, promoted, marketed, distributed, and sold to Plaintiff Lorrie Smith by Defendant Instant Brands, Inc. indirectly through third parties acting on its behalf.

65.     Defendant Instant Brands, Inc. had a duty to do quality assurance inspection, sampling, and testing prior to accepting delivery of Instant Pot® products delivered to the United States from Guangdong Midea Consumer Electric Manufacturing Co Ltd.

66.     Defendant Instant Brands, Inc. did not do quality assurance inspection, sampling, or testing prior to accepting delivery of Instant Pot® products delivered from Guangdong Midea Consumer Electric Manufacturing Co Ltd to the United States.

67.     The failure of Defendant Instant Brands, Inc. to do quality assurance inspection, sampling, or testing prior to accepting delivery of Instant Pot® products delivered from Guangdong Midea Consumer Electric Manufacturing Co Ltd. to the United States was negligent.

68.     Defendant Instant Brands Inc. had a duty to do quality assurance inspection, sampling, and testing prior to accepting delivery of Instant Pot® products from Guangdong Midea Consumer Electric Manufacturing Co Ltd. that were intended to be sold by King Soopers in the State of Colorado.

69.     Defendant Instant Brands Inc. did not do quality assurance inspection, sampling, or testing prior to accepting delivery of Instant Pot® products from Guangdong Midea Consumer Electric Manufacturing Co Ltd. that were intended to be sold by King Soopers in the State of Colorado.

70.     The failure of Defendant Instant Brands Inc. to do quality assurance inspection, sampling, or testing prior to accepting delivery of Instant Pot® products from Guangdong Midea Consumer Electric Manufacturing Co Ltd. that were intended to be sold by King Soopers in the State of Colorado was negligent.

71.     The Instant Pot® purchased by Plaintiff Lorrie Smith was designed, manufactured, exported, and introduced into interstate commerce, pursuant to the specifications of, and at the request and direction of the Defendant, Instant Brands Inc.

72.     The Instant Pot® purchased by Plaintiff Lorrie Smith has the serial number 180380.69102.

73.     The Instant Pot® purchased by Plaintiff Lorrie Smith was manufactured in March of 2018.

74.     The Model IP-LUX80 Instant Pot® purchased by and shipped to Plaintiff Lorrie Smith bears an Underwriters Laboratories Listed mark, UL 9H06 E214884.

75.     The UL listing means, in part, that when the Instant Pot® purchased by Plaintiff Lorrie Smith is under pressure the cover [lid] should not be able to be opened by applying a rotational force of 100 pounds (445 N) or less, with the force to be applied gradually.

76.     Upon information and belief, prior to the date of sale to Plaintiff Lorrie Smith, Instant Brands received notice from other users of Instant Pot® products that use the same lid locking assembly as the IP-LUX80, that the lid of the product opened when the product was under pressure, and in some instances had caused scalding injuries.

77.     In 2019 Plaintiff Lorrie Smith purchased an Instant Pot® Electric Pressure Cooker, Model IP-LUX 80.

78.     Plaintiff Lorrie Smith purchased the subject Instant Pot at a King Soopers grocery store in Douglas County, Colorado.

79.     As other models of Instant Pot® pressure cookers use the same lid locking assembly as the IP-LUX 80 products, it is believed that before the date of sale to Plaintiff Lorrie Smith, Defendant Instant Brands had received notice from other users of other models of Instant Pot® products that the product lid opened while under pressure.

80.     On September 28, 2020, Plaintiff Lorrie Smith, and her then fifteen-year-old daughter, A. S., were cooking food in their home in Douglas County, Colorado, using the Instant Pot® that had been purchased by Plaintiff Lorrie Smith.

81.     At the above said time and place the Instant Pot® was being used according to the directions and instructions that had accompanied the product at the time of its sale to Plaintiff Lorrie Smith.

82.     While using the product, Plaintiff Lorrie Smith's perception and belief was that the Instant Pot® lid had been closed securely; the steam release handle was aligned to the "Sealing" indicator; and there was no indication that the lid had not been properly engaged and secured.

83.     Plaintiff Lorrie Smith's recollection, perception and belief is that when the Instant Pot® cooking cycle was completed, the steam release handle was moved to a "Venting" position, where it remained until the steam stopped venting, and the float valve indicator had dropped down.

84.     Before attempting to open the lid of the Instant Pot®, Plaintiff Lorrie Smith's perception and belief was that the Instant Pot® was no longer under pressure.

85.     As Plaintiff Lorrie Smith began the movement to disengage the lid, the lid suddenly blew off with great force, releasing the pressure that was still contained within the Instant Pot®, with steam and its scalding contents erupting from the Instant Pot®, spewing onto her and her daughter, A. S.

86.     As a direct and proximate result of the above-described sudden release of pressure, and eruption of the steam scalding contents of the Instant Pot®, Plaintiff Lorrie

Smith, and her daughter A. S. sustained serious, painful, disfiguring, and permanent scalding burn injuries, and other injuries and damages as set forth in this Complaint.

87.     Prior to September 28, 2020, Defendant did not issue post-sale warnings that Instant Pot® Electric Pressure Cookers had been reported to have been opened under pressure.

88.     Prior to September 28, 2020, Defendant instant Brands did not recall any Instant Pot® Electric Pressure Cooker products that had been sold because of the risk that the lid of some of these products could be opened while the product was still pressurized.

## ACCRUAL OF THIS CAUSE OF ACTION

89.     Prior to September 28, 2020, Plaintiffs had neither knowledge nor notice that there was any defect in the design, manufacture or labeling of their Instant Pot® Electric Pressure Cooker.

90.     Prior to September 28, 2020, Plaintiffs had not suffered any injury from the use of their Instant Pot® Electric Pressure Cooker.

91.     Plaintiffs' cause of action against Defendant Instant Brands Inc. accrued on September 28, 2020.

## <u>INSTANT POT'S CLAIMS OF SAFETY</u>

92.     The Instant Pot® Electric Pressure Cooker was designed with the specification that the lid cannot be opened, while the contents of the pot were under pressure, by applying a rotational force of less than 100 pounds (445 N), with the force to be applied gradually.

93.     The Instant Pot® was manufactured with the specification that lid cannot be opened, while the contents of the pot were under pressure, by applying a rotational force of less than 100 pounds (445 N), with the force to be applied gradually.

94.     The intended safety feature of the Instant Pot® that the lid cannot be opened while contents of the pot were under pressure, by applying a rotational force of less than 100 pounds (445 N), with the force to be applied gradually, was not adequately tested in design and development of the product to ensure that it was effective 100% of the time under the conditions of reasonably expected use.

95.     Defendant warranted that the Instant Pot® had safety features such that the lid cannot be opened while contents of the pot were under pressure.

96.     The intended safety feature of the Instant Pot® that the lid cannot be opened while contents of the pot were under pressure, by applying a rotational force of less than 100 pounds (445 N), with the force to be applied gradually, was not adequately tested in design and development of the product to ensure that it was failsafe under the conditions of reasonably expected use.

97.     Defendant marketed and promoted the Instant Pot® with the claim, "As a safety feature, until the float valve drops down the lid is locked and cannot be opened." Instant Pot LUX Series User Manual, Pg. 21.  See also: https://instantpot.com/wp-content/uploads/2018/06/Lux-Series-Manual-English-January-23-2018-web-1.pdf.

98.     Defendant marketed and promoted the Instant Pot® LUX Series Products with the claim, "Safety Lid Lock – When cooker is pressurized, the lid will automatically lock to prevent opening the cooker."  https://instantpot.com/portfolio-item/lux/#safety.

15

99.    Defendant marketed and promoted the Instant Pot® LUX Series products with the claim, "Lid Position Detection – If the lid is not in a safe position for pressure cooking, the cooker will not allow cooking to begin."   https://instantpot.com/portfolio-item/lux/#safety.

100.   Defendant marketed and promoted various Instant Pot® products with the claim, "As a safety feature, until the float valve drops down, the lid is locked and cannot be opened."   User Manual at https://instantpot.com/wp-content/uploads/2017/ 07/DUO-Series-Manual-English-January-24-2018-web.pdf.

101.   Defendant marketed and promoted the Instant Pot® with the claim and representation, "Instant Pot is carefully designed to eliminate many common errors that may cause harm or spoil food."  See https://instantpot.com/portfolio-item/duo-6-quart/.

102.   Defendant marketed and promoted the Instant Pot® with the claim, "With the steam release open, pressure never builds up in the cooking pot."  See https://instantpot.com/portfolio-item/three-generations-of-electric-pressure-cookers/.

103.   Defendant marketed and promoted the Instant Pot® LUX Series products with the claim and representation, "It [Instant Pot] has passed the stringent UL & ULC certification giving you uncompromised safety and peace of mind."  See https://instantpot.com/portfolio-item/lux/#safety.

104.   Defendant marketed and promoted the Instant Pot® LUX Series products with the claim and representation, "Instant Pot protects you with 10 proven safety mechanisms and patented technologies."  See https://instantpot.com/portfolio-item/lux/#safety.

16

105.   Defendant marketed and promoted the Instant Pot® with the claim, "All Instant Pot models are 3rd Generation electric pressure cookers."  See https://instantpot. com/portfolio-item three-generations-of-electric-pressure-cookers/.

106.   Defendant marketed and promoted the Instant Pot® with the claim, "3rd Generation Electric Pressure Cookers are Equipped with Smart Programming and Enhanced Safety."  See https://instantpot.com/portfolio-item/three-generations-of-electric -pressure-cookers/.

107.   Defendant marketed and promoted the Instant Pot® with the claim, "Instant Pot® Duo is a smart Electric Pressure Cooker designed to be Safe, Convenient and Dependable."  [See https://instantpot.com/portfolio-item/duo-6-quart/.

108.   Defendant marketed and promoted the Instant Pot® with the claim, "With the microprocessor programs, more sophisticated safety mechanisms become possible. For instance, one common mistake is misplacing the stream release at the open position while starting cooking.  With the steam release open, pressure never builds up in the cooking pot."  See  https:// instantpot.com/portfolio-item/three-generations-of-electric-pressure-cookers/.

109.   Defendant marketed and promoted the Instant Pot® with the claim, "With the advance in pressure and temperature sensor accuracy, the 3rd Generation electric pressure cookers implement sophisticate control with digital technology.  Two most remarkable features are Smart Programming and Enhanced Safety.  These features greatly improve cooking result, maintain consistence and enhance safety."  See https:// instantpot.com/portfolio-item/three-generations-of-electric-pressure-cookers/.

110.   Defendant marketed and promoted the Instant Pot® with the claim, "These greatly improve cooking result and maintain consistence.  Instant Pot is carefully designed to eliminate many common errors that may cause harm or spoil food.  It passed the stringent UL certification giving you uncompromised safety and peace of mind and protects you with 10 proven safety mechanisms and patented technologies."  See https://instantpot.com/portfolio-item/duo-6-quart/.

111.   Defendant marketed and promoted the Instant Pot® with the claim, "Instant Pot® Duo uses the latest 3rd generation technology with an embedded microprocessor, which monitors the pressure and temperature, keeps time and adjusts heating intensity. 3 temperatures in 'Sauté' for searing, simmering or thickening and 3 temperatures in 'Slow Cook' to provide greater flexibility."  See https://instantpot.com/portfolio-item/duo-6-quart/.

112.   The design and performance of the Instant Pot® is subject to certain industry standards, including but not limited to Underwriters Laboratories [UL] Standard 136 (8th Edition), Standard for Pressure Cookers; American Society for Testing and Materials [ASTM], ASTM F1217 – 17, Standard Specification for Cooker, Steam; and American National Standards Institute [ANSI].

113.   UL 136 Standard for Safety, Pressure Cookers, requires, in part, that when a pressure cooker vessel is under pressure the cover [lid] should not be able to be opened by applying a rotational force of 100 pounds (445 N), with the force to be applied gradually.

18

114.    Pursuant to applicable industry standards, a pressure cooker sold for consumer use should not be designed or constructed in such a way that the lid can be opened by the consumer when the contents of the pot are still under pressure, without the use of a rotational force in excess of 100 lbs. (445 N), applied gradually.

**NOTICE OF UNSAFE AND DEFECTIVE PRODUCTS**

115.    On March 8, 2016, Defendant Instant Brands received notice from a user of an Instant Pot® purchased from Amazon on November 27, 2015, that "Your pot malfunctioned.  I opened the lid and hot soup splashed out of the pot all over me.  I was seen in the ER and have 2nd degree burns all over my chest."

116.    On August 24, 2016, Defendant Instant Brands received notice from a user of an Instant Pot® purchased from Amazon in July of 2016, "[T]his past Sunday, I had a traumatic encounter.  I had the machine in soup mode and it was cooking for several hours.  The machine let me know when it was fine and I opened the lid.  And when I did, a forceful blast occurred.  Food and steam shot out of the machine.  I suffered severe second and third degree burns."

117.    On September 7, 2016, Defendant Instant Brands received notice from a user of an Instant Pot® IP-DUO60 V2 purchased from Amazon on July 13, 2016, "After signaling off and beeping, when I tried to remove the lid the pressure cooker exploded contents causing 2nd and first degree burns.  Paramedics were called and transport to burn trauma unit followed."

118.    On October 7, 2016, Defendant Instant Brands received notice from a user of an Instant Pot® DUO60 V2, manufactured in April of 2016, purchased from Amazon on

September 6, 2016, "I suffered a second degree burn on 9/13/16 from using your Instant Pot pressure cooker.  The model I have is IP-DUO60 V2.  We just purchased it from Amazon on 9/6/16 and this was only my second time using it.  When the accident happened I was making ox tail soup and when I turned the lid to take it off, it popped off completely and the soup spilled all over my body.  It is my understanding that the pot has a safety function where it should not open if there is still too much pressure so this should never have happened."

119.   Upon information and belief, Instant Brands received notice of other instances in the year 2016 where it was alleged that the lid of an Instant Pot electric pressure cooker opened while under pressure, causing injury.

120.   On January 5, 2017, Defendant Instant Brands received notice from a user of an Instant Pot® IP-DUO60 V2, manufactured in September of 2016, "Isn't there supposed to be a safety feature to prevent opening the lid if pressure is built up?  I've just spent the last two hours at urgent care and the pharmacy."  "After the cycle completed and the machine beeped, I switched the vent to Venting.  After that, I twisted the lid and the liquid shot out forcefully – enough to land some of the liquid in a tall container about 8 inches away from the pot."

121.   On January 7, 2017, Defendant Instant Brands received notice from a user of an Instant Pot® IP-DUO60 V2, manufactured in April of 2016, "I was making soup when it happened.  I had put it on manual for 8 minutes.  My level was to 4L so it was below the full level.  It had ended and went into the automatic [sic] steam release mode.  I then went

ahead and started to vent.  It vented until there was really no more steam coming out and then when I went to open it the lid flew off and soup came flying out and scalded me."

122.    On January 13, 2017, Defendant Instant Brands received notice from a user of an Instant Pot® DUO60 V2, manufactured in May of 2016, Serial Number 160560.50046, "The float valve was down.  I released the steam through the float valve until it wasn't coming out anymore, then put it back to the closed position.  Then I attempted to open it, assuming if there was pressure it wouldn't allow me to open it.  It moved, so I slowly began to open it, then when it unlocked it violently erupted out of the pot and onto my hands, the floor, the cooking surface, the counter, just all over."

123.    On March 8, 2017, Defendant Instant Brands received notice from a user of an Instant Pot® IP-DUO60 V2, manufactured in September of 2016, purchased from Amazon, "I used my instant pot on Monday night to make a soup.  I let the pressure release on its own and went over to check on it.  I began to open the lid and the top exploded off and the contents of my pot blew out all over my kitchen, leaving first degree burns on my forearm.  Plastic lids to jars were melted completely.  This product is dangerous.  I purchased through Amazon and am going to ask them for a refund."

124.    On April 6, 2017, Defendant Instant Brands received notice from a user of an Instant Pot® IP-DUO60 V2, manufactured in November of 2016, purchased from Amazon in January of 2017, "On Tuesday 4/4/17 I cooked soup in the pot.  After it was done it went to keep warm mode as usual.  I let it sit as I always do.  After awhile I went to check the soup.  I moved the release valve to make sure no steam was in the pot.  I

then turned the lid and the pot exploded all over the counter and my right hand and forearm."

125.   On April 17, 2017, Defendant Instant Brands received notice from a user of an Instant Pot® IP-DUO60 V2, manufactured in August of 2016, Serial Number 160860.45453, purchased from Amazon, "Your product resulted in a second degree burn and multiple other burns.  You claim that your Saftey [sic] Lid Lock prevents accidental opening when pressurized.   However when we opened the lid, after releasing the pressure using the release valve, it spewed boiling liquid several feet across the kitchen and severely burned a kid, which resulted in a hospital trip."  "The injured kid received 1st and 2nd degree burns but is healing well so far.

126.   On May 8, 2017, Defendant Instant Brands received notice from a user of an Instant Pot® DUO60, "Yesterday evening my husband was opening our instant pot with chicken and approximately 4 cups of broth in it when the pot malfunctioned spewing boiling hot broth all over my husband and our kitchen.  My husband sustained scald burns over a large portion of his torso and groin through his clothes and several appliances on the counter were damaged in the process.  The instant pot had been on manual for 14 minutes; my husband released the pressure fully and the float valve went down."

127.   On June 1, 2017, Defendant Instant Brands received notice from a user of an Instant Pot® DUO60 V2, manufactured in February of 2017, Serial Number 170260.77799, "We got our pot not long ago, maybe 1.5 months.  I have only used it three times and the pressurizing doesn't seem right.  This last time, the pressure was not let out despite me following instructions and venting, and the whole pot pretty much

exploded.  When we opened the lid soup literally shot everywhere covering our cabinets, inside drawers, everywhere on our wooden floors.  Disaster."

128.   On August 16, 2017, Defendant Instant Brands received notice from a user of an Instant Pot® DUO60 V2, manufactured in May of 2016, Serial Number 160560.20630 "When I went to release it – major steam had already been released and I then felt it was taking too long and was probably done.  There was a slight resistance but when I turned it – it opened and the broth inside splashed out."

129.   On September 13, 2017, Defendant Instant Brands received notice from a user of an Instant Pot® DUO60 V1, manufactured in September of 2015, Serial Number 150960.03280 "The incident happened almost exactly a year ago in March 2017.  I was making chicken bone broth.  I used about a pound of chicken bones, lots of garlic, apple cider vinegar, salt, and filled it with water just below where is says max.  I closed the lid, sealed it, pressed Manual and set it for one hour and a couple minutes later, it beeped and showed on the screen no pressure (in fewer letters: I think it looked like this, NOPRES).  It had never happened before so it was confusing because I had made a bunch of batches of the same thing before.  I went over to look at it, made sure it vented, and felt the lid.  It was hard to open, but I figured because it said it had no pressure that it would be ok to open.  That was really a bad idea on my part.....the lid flew off and broth went everywhere.  Thankfully my mother in law was there to help me and only part of me that was burned was my right arm."

130.   On September 20, 2017, Defendant Instant Brands received notice from a user of an Instant Pot® DUO60, manufactured in August of 2015, Serial Number

150860.20256 "We used our pressure cooker to make applesauce yesterday. The pressure was released and my husband opened the lid. The pressure apparently was not released and the lid exploded off and hot applesauce severally burned my husbands [sic] face and arms, my grandsons [sic] face, and my shoulder and neck. Can you please explain how this could have happened? We turned the release pressure button on the top of the machine."

131.   Sometime on or before October 26, 2017, an Electric Pressure Cooker, Model IP-DUO60 V2.1, with a "new construction of Locking Pin Assembly", was submitted by the manufacturer to UL for examination and testing.

132.   Sometime on or before October 26, 2017, pursuant to UL Standard 136, UL conducted Cover Opening and Locking Mechanism Operation tests of an Electric Pressure Cooker, Model IP-DUO60 V2.1, with the new construction of Locking Pin Assembly.

133.   On October 26, 2017, after conducting Cover Opening and Locking Mechanism Operation tests of an Electric Pressure Cooker, Model IP-DUO60 V2.1, with the new construction of Locking Pin Assembly, UL issued a "New" certification of the UL listing for the DUO60 V2.1, and some other Instant Pot® pressure cooker products.

134.   Upon information and belief, Instant Brands received notice of other instances in the year 2017 where it was alleged that the lid of an Instant Pot electric pressure cooker opened while under pressure, causing injury.

135.   On February 6, 2018, Joann S. Silin filed a civil action against Instant Brands, Inc. and Amazon.com Inc., in the United States District Court for the Northern

24

District of California Case 5:18-cv-00781, for serious burn injuries she received March 6, 2016 when the lid of an Instant Pot allegedly opened while under pressure.

136.    By January 30, 2018, if not earlier, Instant Brands was aware that Matthew and Mary Cooper claimed that their minor daughter had received serious burn injuries on September 27, 2017 when the lid of an Instant Pot, manufactured in May of 2016, and sold to them over the Internet by Amazon in July of 2016, allegedly opened while under pressure.

137.    On August 9, 2018, Matthew Cooper and Mary Cooper filed a civil action against Instant Brands, Inc., in the District Court of Douglas County, Colorado, subsequently removed to United States District Court for the District of Colorado, Case No. 1:18-cv-02611, for serious burn injuries their minor daughter received on September 27, 2017 when the lid of an Instant Pot allegedly opened while under pressure.

138.    Upon information and belief, Instant Brands received notice of other instances in the year 2018 where it was alleged that the lid of an Instant Pot electric pressure cooker opened while under pressure, causing injury.

139.    As other models of Instant Pot® pressure cookers, including the IP-LUX80, use the same lid locking assembly as the IP-DUO products, it is believed that before 2019, the year of sale to Plaintiffs, Defendant Instant Brands received notice from other users of other models of Instant Pot® products that the product opened when under pressure.

140.    Prior to 2019 Instant Brands did not issue post-sale warnings that some of its instant Pot Electric Pressure Cookers had been reported to have been opened under pressure.

141.    Prior to the sale of Defendant's Instant Pot® product to Plaintiff Lorrie Smith in 2019, Defendant had received notice that in some of the Instant Pot® products that had been sold, the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened.

142.    Prior to the sale of Defendant's Instant Pot® product to Plaintiff Lorrie Smith in 2019, Defendant had received notice that in some of the Instant Pot® products that had been sold, it appeared to the consumer that the contents were not under pressure, when in fact they were, causing scalding hot contents to erupt from the pot when the lid was opened.

143.    Prior to the sale of Defendant's Instant Pot® product to Plaintiff Lorrie Smith in 2019, Defendant had received notice that in some of the Instant Pot® products that had been sold, the Instant Pot® was manufactured in such a way that it would open when under pressure, causing scalding hot contents to erupt from the pot when the lid was opened.

144.    Prior to the sale of Defendant's Instant Pot® product to Plaintiff Lorrie Smith in 2019, Defendant had received notice that the statement in the Instant Pot® User Manual, "As a safety feature, until the float valve drops down, the lid is locked and cannot be opened," was not true.

145.    Prior to the sale of Defendant's Instant Pot® product to Plaintiff Lorrie Smith in 2019, Defendant had received notice that the intended safety feature for preventing the lid from being opened when the contents were under pressure was defectively designed,

26

causing scalding hot contents to erupt from the pot when the lid was opened by consumers, and causing injury.

146.    Prior to the sale of Defendant's Instant Pot® product to Plaintiff Lorrie Smith in 2019, Defendant had received notice that some of the safety devices intended for preventing the lid from being opened when the contents were under pressure were defectively manufactured, causing scalding hot contents to erupt from the pot when the lid was opened by consumers, and causing injury.

147.    On September 5, 2019, Teresa Hundley filed a civil action against Instant Brands, Inc., in the Superior Court of King County, Washington, Case No. 19-2-23276-5, for serious burn injuries she received on December 25, 2017 when the lid of an Instant Pot, manufactured in September 2015, and sold to her over the Internet by Amazon in November 2016, allegedly opened while under pressure.

148.    On October 3, 2019, Kevonna Michelle Young filed a civil action against Instant Brands, Inc., in the United States District Court for the Northern District of Georgia, Case No. 1:19-cv-04461, for serious burn injuries she received on October 7, 2017 when the lid of an Instant Pot allegedly opened while under pressure.

149.    On November 15, 2019, Deborah Ann Shipley filed a civil action against Instant Brands, Inc., in the United States District Court for the District of Colorado, Case No. 1:19-cv-03235, for serious burn injuries she received on September 18, 2017 when the lid of an Instant Pot allegedly opened while under pressure.

150.    On October 8, 2019, Erica Vasile and Timothy Vasile filed a civil action against Instant Brands, Inc., in the Superior Court of Bergen County, New Jersey,

subsequently removed to United States District Court for the District of New Jersey, Case No. 2:19-cv-20477, for serious burn injuries Erica Vasile received on October 30, 2017 when the lid of an Instant Pot allegedly opened while under pressure.

151.   On November 26, 2019, Klaudia Elliot filed a civil action against Instant Brands, Inc., in the United States District Court for the District of Colorado, Case No. 1:19-cv-03341, for serious burn injuries she received on December 24, 2017 when the lid of an Instant Pot allegedly opened while under pressure.

152.   On December 9, 2019, Dustin Matthew Smith filed a civil action against Instant Brands, Inc., in the United States District Court for the Southern District of Georgia, Case No. 5:19-cv-00113, for serious burn injuries he received on December 14, 2017 when the lid of an Instant Pot allegedly opened while under pressure.

153.   On December 10, 2019, Jenny Tze-Jay Pao filed a civil action against Instant Brands, Inc., in the United States District Court for the Northern District of California, Case No. 4:19-cv-08070, for serious burn injuries she received on December 17, 2017 when the lid of an Instant Pot allegedly opened while under pressure.

154.   On December 16, 2019, Lindie Snyder filed a civil action against Instant Brands, Inc., in the United States District Court for the Middle District of Georgia, Case No. 4:19-cv-00212, for serious burn injuries her minor daughter received on December 28, 2017 when the lid of an Instant Pot allegedly opened while under pressure.

155.   On December 17, 2019, Doris Miller filed a civil action against Instant Brands, Inc., in the United States District Court for the Northern District of Illinois, Case

No. 1:19-cv-08237, for serious burn injuries she received on November 12, 2018 when the lid of an Instant Pot allegedly opened while under pressure.

156.    Upon information and belief, Instant Brands received notice of other instances in the year 2019 where it was alleged that the lid of an Instant Pot electric pressure cooker opened while under pressure, causing injury.

157.    On February 11, 2020, Liudmila Yazykova filed a civil action against Instant Brands, Inc., in the United States District Court for the Northern District of California, Case No. 3:20-cv-01084, for serious burn injuries her minor daughter received on March 19, 2018 when the lid of an Instant Pot allegedly opened while under pressure.

158.    On February 11, 2020, Makayla Ann Pedigo filed a civil action against Instant Brands, Inc., in the Circuit Court of Monroe County, Kentucky, subsequently removed to the United States District Court for the Western District of Kentucky, Case No. 1:20-cv-00026, for serious burn injuries she received on January 16, 2019 when the lid of an Instant Pot allegedly opened while under pressure.

159.    On February 14, 2020, Gail Barela filed a civil action against Instant Brands, Inc., in the United States District Court for the Central District of California, Case No. 2:20-cv-01518, for serious burn injuries she received on February 19, 2019 when the lid of an Instant Pot allegedly opened while under pressure.

160.    On March 13, 2020, Latoya Kaigler filed a civil action against Instant Brands, Inc., in the United States District Court for the Eastern District of Louisiana, Case No. 2:20-cv-00887, for serious burn injuries she received on March 22, 2019 when the lid of an Instant Pot allegedly opened while under pressure.

161.   On March 19, 2020, Jody Gessford filed a civil action against Instant Brands, Inc., in the United States District Court for the District of Maryland, Case No. 1:20-cv-00737, for serious burn injuries he received on March 25, 2017 when the lid of an Instant Pot allegedly opened while under pressure.

162.   On June 1, 2020 Adina Joita filed a civil action against Instant Brands, Inc., in the Circuit Court of Cook County, Illinois, Case No. 2020 L 004788, for serious burn injuries she received on March 5, 2018 when the lid of an Instant Pot allegedly opened while under pressure.

163.   On June 2, 2020, Jennifer Orlik-Walski filed a civil action against Instant Brands, Inc., in the United States District Court for the Northern District of Illinois, Case No. 1:20-cv-03258, for serious burn injuries she received on November 12, 2018 when the lid of an Instant Pot allegedly opened while under pressure.

164.   On June 3, 2020, Maria Jaimes filed a civil action against Instant Brands, Inc., in the United States District Court for the Western District of Texas, Case No. 1:20-cv-00590, for serious burn injuries she received on February 4, 2019 when the lid of an Instant Pot allegedly opened while under pressure.

165.   Upon information and belief, Instant Brands received notice of other instances in the year 2020, prior to September 28, 2020, where it was alleged that the lid of an Instant Pot electric pressure cooker opened while under pressure, causing injury.

166.   Prior to September 28, 2020, Defendant had received notice that in some of the Instant Pot® products that had been sold, the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened.

167.    Prior to September 28, 2020, Defendant had received notice that in some of the Instant Pot® products that had been sold, it appeared to the consumer that the contents were not under pressure, when in fact they were, causing scalding hot contents to erupt from the pot when the lid was opened.

168.    Prior to September 28, 2020, Defendant had received notice that in some of the Instant Pot® products that had been sold, the Instant Pot® was manufactured in such a way that it would open when under pressure, causing scalding hot contents to erupt from the pot when the lid was opened.

169.    Prior to September 28, 2020, Defendant had received notice that the statement in the Instant Pot® User Manual, "As a safety feature, until the float valve drops down, the lid is locked and cannot be opened," was not true.

170.    Prior to September 28, 2020, Defendant had received notice that the intended safety feature for preventing the lid from being opened when the contents were under pressure was inadequately and defectively designed, causing scalding hot contents to erupt from the pot when the lid was opened by consumers, and causing injury.

171.    Prior to September 28, 2020, Defendant had received notice that some of the safety devices intended for preventing the lid from being opened when the contents were under pressure were defectively manufactured, causing scalding hot contents to erupt from the pot when the lid was opened by consumers, and causing injury.

172.    Prior to September 28, 2020 Defendant Instant Brands did not:

a) Warn consumers who had purchased Instant Pot electric pressure cookers that the lid could open while under pressure and cause serious injury;

b) Recall the instant Pot Pressure electric pressure cooker products that had the inadequate lid locking pin assembly; or

c) Offer to consumers to replace the inadequate lid locking mechanism with the new construction lid locking pin assembly.

173.   On September 28, 2020, Plaintiff Lorrie Smith, and her then fifteen-year-old daughter, A. S., were cooking food in their home in Douglas County, Colorado, using the Instant Pot® that had been purchased by Plaintiff Lorrie Smith, when the lid of the product opened while the product was under pressure, causing severe burn injuries to Plaintiff Lorrie Smith and her daughter, A. S.

174.   On November 20, 2020, Kayce Phy filed a civil action against Instant Brands, Inc., in the United States District Court for the District of Kansas, Case No. 1:20-cv-00590, for serious burn injuries she received on November 26, 2018 when the lid of an Instant Pot allegedly opened while under pressure.

175.   On December 3, 2020, Danielle Diaz filed a civil action against Instant Brands, Inc., in the United States District Court for the Central District of California, Case No. 8:20-cv-02300, for serious burn injuries she received on December 20, 2018 when the lid of an Instant Pot allegedly opened while under pressure.

176.   On December 7, 2020, Susan Stayrook filed a civil action against Instant Brands, Inc., in the United States District Court for the Western District of Pennsylvania,

Case No. 3:20-cv-00249, for serious burn injuries she received on December 28, 2018 when the lid of an Instant Pot allegedly opened while under pressure.

177.   Upon information and belief, Instant Brands received notice of other instances in the year 2020, after September 28, 2020, where it was alleged that the lid of an Instant Pot electric pressure cooker opened while under pressure, causing injury.

178.   On January 4, 2021, Sidharta Moises filed a civil action against Instant Brands, Inc., in the United States District Court for the Central District of California, Case No. 2:21-cv-00038, for serious burn injuries he received on January 16, 2019 when the lid of an Instant Pot allegedly opened while under pressure.

**ALLEGATIONS OF DEFECTIVE PRODUCT**

179.   The Instant Pot® in general, and the Instant Pot® purchased by Plaintiff specifically, was not merchantable, and was unreasonably dangerous for its intended and/or reasonably foreseeable uses in that it was and is unreasonably dangerous under Colorado product liability law as a result of one or more, or a combination, of the following:

  a.  the Instant Pot® was designed in such a way that the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened;

  b.  the Instant Pot® was manufactured in such a way that the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when the lid was opened;

  c.  the Instant Pot® was designed in such a way that the product would indicate that the contents were not under pressure, when

in fact they were, causing scalding hot contents to erupt from the pot when the lid was opened;

d.  the Instant Pot® did not comply with applicable UL standards;

e.  the Instant Pot® did not comply with applicable ASTM standards;

f.  the Instant Pot® did not comply with applicable ANSI standards;

g.  the Instant Pot® was manufactured in such a way that the product would indicate that the contents were not under pressure, when in fact they were, causing scalding hot contents to erupt from the pot when the lid was opened;

h.  the warnings that accompanied the product were inadequate to warn consumers that the lid of the product could be opened while the product was still pressurized, and the serious injury could result;

i.  the Instant Pot® User Manual stated, "As a safety feature, until the float valve drops down, the lid is locked and cannot be opened," when that in fact was not true;

j.  the Instant Pot® User Manual stated, "As a safety feature, until the float valve drops down, the lid is locked and cannot be opened," when in fact the lid could be opened when the float valve was down, causing scalding hot contents to erupt from the pot when the lid was opened;

     k.   the Instant Pot® was designed in such a way that the float valve could be in the down position when the contents were still under pressure, rendering the safety feature of locking the lid infective, causing scalding hot contents to erupt from the pot when the lid was opened; and,

     l.   the Instant Pot® was designed in such a way that the float valve, an intended safety feature, intended to lock the lid and prevent the opening of the lid when the device was under pressure, was not effective, causing the lid to be opened when the device was under pressure, causing scalding hot contents of the Instant Pot® to erupt from the pot when the lid was opened.

180.   The Instant Pot® purchased by Plaintiff Lorrie Smith was dangerous to an extent beyond which would be contemplated by the ordinary consumer with the ordinary knowledge common to the community as to its characteristics in that the Instant Pot® was designed in such a way that the ordinary consumer would not contemplate that the lid could be opened when the float valve was down, and the contents were still under pressure, causing scalding hot contents of the Instant Pot® to erupt from the pot when the lid was opened.

181.   The Instant Pot® purchased by Plaintiff Lorrie Smith was dangerous to an extent beyond which would be contemplated by the ordinary consumer with the ordinary knowledge common to the community as to its characteristics in that the Instant Pot® was manufactured in such a way that the ordinary consumer would not contemplate that the

lid could be opened when the float valve was down, and the contents were still under pressure, causing scalding hot contents of the Instant Pot® to erupt from the pot when the lid was opened.

## PLAINTIFFS' INJURIES AND DAMAGES

182.   As a direct and proximate result of the defects in, and the failure of, the Instant Pot®, Plaintiff Lorrie Smith, and Plaintiffs' minor daughter, A. S. have sustained injuries and damages including, but not limited to:

(a)   severe burn injuries to their bodies from scalding;

(b)   past pain and anguish, both in mind and in body;

(c)   future pain and anguish, both in mind and in body;

(d)   past medical expenses;

(e)   future medical expenses, including future plastic surgery;

(f)   loss of enjoyment of life;

(g)   permanent disfigurement; and,

(h)   physical impairment.

183.   As a direct and proximate result of the defects in, and the failure of, the Instant Pot®, Plaintiffs John Smith and Lorrie Smith have sustained injuries and damages including, but not limited to, past and future medical bills associated with the care and treatment of their daughter, A. S., during the reminder of her minority.

## CAUSES OF ACTION

## COUNT I

## STRICT PRODUCT LIABILITY

## Colorado Product Liability Act, C.R.S. §13-21-401, *et seq.*

184.   Plaintiffs incorporate by reference the facts and allegations set forth in the paragraphs above of this Complaint.

185.   Defendant is subject to the provisions of the Colorado Product Liability Act, C.R.S. §13-21-401, *et. seq.* for products that it manufactured, and which where were sold or distributed to citizens of the State of Colorado.

186.   The Instant Pot® purchased by Plaintiff Lorrie Smith is a "product", as that word is used in the Colorado Product Liability Act.

187.   Defendant was the manufacturer of the Instant Pot® purchased by Plaintiff Lorrie Smith, as the word "manufacturer" is defined by the Colorado Product Liability Act, C.R.S. §13-21-401 (1).

188.   Defendant was the seller of the Instant Pot® purchased by Plaintiff Lorrie Smith, as the word "seller" is defined by the Colorado Product Liability Act, C.R.S. §13-21-401(3).

189.   Pursuant to the Colorado Product Liability Act, Defendant owed a duty to Plaintiffs and their minor daughter to manufacture and sell a product that was reasonably safe in construction, which did not materially deviate from applicable design specifications, or otherwise deviate in some material way from otherwise identical units in Defendant's product line.

190.   Pursuant to the Colorado Product Liability Act, Defendant owed a duty to Plaintiffs to design, manufacture, assemble, test, label, distribute, and sell a product that was not unreasonably dangerous.

191.   Pursuant to the Colorado Product Liability Act, Defendant owed a duty to Plaintiffs to design, manufacture, assemble, test, label, distribute, and sell a product that conformed to its implied warranties, including, but not limited to, the implied warranty that Defendant's products were reasonably safe for use by consumers.

192.   Defendant had a duty to design, manufacture, import, place into the stream of commerce, distribute, market, and sell the Instant Pot® so that it was neither defective nor unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

193.   The Instant Pot® purchased from Defendant and used by Plaintiffs and their minor daughter was in a defective condition and unreasonably dangerous to the user or consumer at the time the Instant Pot® left the possession of Defendant, and at the time the device entered the stream of commerce, because of, but not limited to, the followings:

a) the Instant Pot® was not reasonably safe as intended to be used;

b) the Instant Pot® contained design defects, including that the lid could be opened when the pot was under pressure;

c) the Instant Pot® contained manufacturing defects, including that the lid could be opened when the pot was under pressure, which was not intended in its design and specifications;

38

d)  the Instant Pot® contained manufacturing defects, including that the pressure indicators indicated that the pot was not under pressure, when in fact it was under pressure, which was not intended in its design and specifications;

e)  the Instant Pot® contained defects in its warnings, which were inadequate to inform consumers that the lid of these products could be opened while the product was under pressure, causing serious injury;

f)  the design of the Instant Pot® presented risks which exceeded the utility of the product;

g)  the Instant Pot® was dangerous to an extent beyond which would be contemplated by the ordinary consumer, and did not meet consumer expectations;

h)  the Instant Pot® did not comply with applicable UL Standards;

i)  the Instant Pot® did not comply with applicable ASTM Standards;

j)  the Instant Pot® did not comply with applicable ANSI Standards;

k)  the Instant Pot® did not comply with applicable industry standards;

l)  a reasonably prudent manufacturer, distributor, or seller, given knowledge of the Instant Pot®'s condition, would not have marketed, distributed or sold the device;

39

m) the Instant Pot® was not appropriately or adequately tested before its distribution or sale;

n) the Instant Pot® purchased from Defendant and used by Plaintiffs did not warn that the lid could be opened when the pot was under pressure, and that serious injury could result from opening under pressure;

o) the Instant Pot® purchased from Defendant and used by Plaintiffs did not warn that in spite of devices and indicators on the pot indicating that the pressure had been released, the pot may still be under pressure, and that serious injury could result from opening under pressure; and,

p) the Instant Pot® marketing, instructions, and packaging, misrepresented its safety characteristics and the inability to open the lid when the pot was under pressure, when in fact it could be opened under pressure.

194. Had Defendant adequately tested the Instant Pot® it would have discovered:

a) the lid could be opened when the Instant Pot® was still under pressure;

b) the safety devices were inadequate to prevent the lid from being opened when the Instant Pot® was still pressurized;

c) the safety devices of the Instant Pot®, at times, would indicate that there was no pressure in the Instant Pot®, when in fact there was pressure in the pot; and,

d) that when the lid of the Instant Pot® was opened under pressure steam and the contents would erupt from the pot and cause severe scalding injuries to the consumer opening the Instant Pot®, and anyone near the Instant Pot®.

195.    The Instant Pot® purchased by Plaintiff Lorrie Smith was expected, and did, reach the consumer without substantial change in the condition in which it was sold.

196.    The defects in the Instant Pot® purchased by Plaintiff Lorrie Smith caused the injuries to Plaintiffs and their minor daughter, as set forth in this Complaint.

197.    Pursuant to the provisions of the Colorado Product Liability Act, C.R.S. §13-21-401, et. seq., Defendant is deemed to be the "manufacturer" of products that it designed, distributed, or sold, and that were used by citizens of the State of Colorado in the State of Colorado, and are thereby liable to Plaintiffs for the claims asserted in this count of this Complaint.

198.    Plaintiffs suffered damages, as set forth in this Complaint.

199.    As a direct and proximate result of the conduct of Defendant, as set forth herein, Plaintiffs' minor daughter, A. S., suffered the injuries and damages as set forth in this Complaint.

## COUNT II

**NEGLIGENCE**

200.   Plaintiffs incorporate by reference the facts and allegations set forth in the paragraphs above of this Complaint.

201.   The conduct, actions, and failure to act, of Defendant, as set forth above were negligent.

202.   In addition to the above negligence, the conduct, actions, and failure to act, of Defendant, were negligent in that:

a)   the Instant Pot® as designed allowed the lid to be opened when the pot was under pressure, when that was not the stated intent of the design;

b)   the Instant Pot® as designed had devices that did not prevent the lid from being opened when the pot was under pressure, when the stated intent of the Instant Pot® design was that the lid could not be opened when the pot was under pressure;

c)   the Instant Pot® as manufactured had defects that were not discovered before the product left the control of Defendant, which manufacturing defects allowed the lid to be opened when the pot was under pressure, contrary to its intended design;

d)   the Instant Pot® was not adequately tested in design to ensure that it would perform as intended, and that the lid could not be opened when the pot was under pressure;

42

e) the Instant Pot® as manufactured was not adequately tested to ensure that it would perform as represented, and that the lid could not be opened when the pot was under pressure, in spite of indication to the contrary on the product, and that serious injury could result;

f) the Instant Pot® did not comply with applicable UL Standards;

g) the Instant Pot® did not comply with applicable ASTM Standards;

h) the Instant Pot® did not comply with applicable ANSI Standards;

i) the Instant Pot® did not comply with applicable industry standards;

j) the marketing materials, instructions, and packaging misrepresented that the Instant Pot® failed to warn that the lid could be opened when the pot was under pressure; and,

k) the marketing materials, instructions, and packaging misrepresented that the Instant Pot® had safety devices that prevented the lid from being opened when the pot was under pressure, when that was not true.

203. The conduct, actions, and failure to act of Defendant, were negligent in that they failed to do adequate, if any, quality assurance inspection, sampling, or testing prior to accepting delivery of Instant Pot® products delivered from Guangdong Midea Consumer Electric Manufacturing Co Ltd.

204.    The conduct, actions, and failure to act of Defendant, were negligent in that it had received notice that the claims and assurances they had made as to the safety of these devices, and the claimed inability of the lid to be opened when the product was under pressure, were false, yet they continued to market, sell, and distribute these products with such claims, which Defendant knew or reasonably should have known, were false.

205.    The conduct, actions, and failure to act of Defendant, were negligent in that it had received notice that the claims and assurances they had made as to the safety of these devices, and the claimed inability of the lid to be opened when the product was under pressure, were false, yet they failed to provide post-sale warnings to consumers that those claims, and assurances had been demonstrated to be false.

206.    In the exercise of reasonable care, Defendant knew or should have known that the Instant Pot® in general, and Plaintiffs' Instant Pot® specifically, was negligently designed, negligently tested, negligently manufactured, failed to comply with applicable industry standards, contained false and misleading safety warnings and information, misrepresented its safety and safety devices and characteristics, and otherwise was defective and likely to cause serious bodily injury to consumers when being used as reasonably expected.

207.    Pursuant to of the provisions of the Colorado Product Liability Act, C.R.S. §13-21-401, et. seq., Defendant is deemed to be the "manufacturer" of products that it distributed, and that were used by citizens of the State of Colorado in the State of

Colorado and is thereby liable to Plaintiffs for the claims asserted in this count of this Complaint.

208.    As a direct and proximate result of the negligence of Defendant, as set forth above, Plaintiffs' minor daughter, A. S., suffered the injuries and damages as set forth in this Complaint.

## COUNT III

**VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT**

**C.R.S. §6-1-101, et seq.**

209.    Plaintiffs incorporate by reference the facts and allegations as set forth in the paragraphs above of this Complaint.

210.    The claims and statements made by Defendant regarding the performance and safety features of the Instant Pot®, as set forth above, were false.

211.    The claims and statements made by Defendant regarding the performance and safety features of the Instant Pot®, as set forth above, were deceptive trade practices, as defined in C.R.S. §6-1-105, including, but not limited to C.R.S. §6-1-105 (e), (g), and (i).

212.    Pursuant to the provisions of the Colorado Product Liability Act, C.R.S. §13-21-401, et. seq., Defendant Instant Brands is deemed to be the "manufacturer" of products that they distributed, and that were used by citizens of the State of Colorado in the State of Colorado and are thereby liable to the Plaintiffs for the claims asserted in this count of this Complaint.

213. As a direct and proximate result of Defendant's deceptive trade practices, Plaintiffs are entitled to all of the damages and remedies provided to Colorado consumers pursuant to C.R.S. §6-1-113, including but not limited to treble damages, and the costs of this action, together with reasonable attorney fees as determined by the Court.

## COUNT IV

### BREACH OF IMPLIED WARRANTY

214. Plaintiffs incorporate by reference the facts and allegations as set forth in the paragraphs above of this Complaint.

215. Defendant impliedly warranted that the Instant Pot® was safe, merchantable, and free of defects that would cause injury when being used in a reasonable and expected way.

216. Plaintiffs used the Instant Pot® for its intended purpose, and in a reasonably foreseeable manner.

217. Plaintiffs' Instant Pot® did not conform with the implied warranty of merchantability in that it could be opened when under pressure.

218. As a direct and proximate result of the breach of the implied warranty of merchantability, as set for the herein, and as set forth above, Plaintiffs' minor daughter, A. S., suffered the injuries and damages set forth in this Complaint.

## COUNT V

### BREACH OF EXPRESS WARRANTY

219. Plaintiffs incorporate by reference the facts and allegations as set forth in the paragraphs above of this Complaint.

46

220.   Defendant expressly warranted that the Instant Pot® lid could not be opened when under pressure.

221.   Plaintiffs' Instant Pot® did not conform with the express warranty in that the lid could be opened when under pressure.

222.   As a direct and proximate result of the breach of the express warranty of merchantability, as set forth herein, and as set forth above, Plaintiffs' minor daughter, A. S., suffered the injuries and damages set forth in this Complaint.

<u>COUNT VI</u>

**WANTON AND RECKLESS CONDUCT**

**C.R.S. § 13-21-102.**

223.   Plaintiffs incorporate by reference the factual background as set forth in the paragraphs above of this Complaint.

224.   The acts and conduct of Defendant, set forth above, was attended by circumstances of malice, or willful and wanton conduct, and/or in reckless disregard of the consequences from which malice may be inferred and showed a total disregard for human life and human suffering.  This conduct included, but was not limited to:

a)  putting on the market for distribution and sale a pressure cooker that claimed in its instructions the lid could not be opened when under pressure, when in fact it could, and Defendant knew that it could;

b)  designing, manufacturing, exporting, importing, distributing, marketing, and selling a pressure cooker that claimed in its

47

marketing materials the lid could not be opened when under pressure, when in fact it could, and Defendant knew that it could;

c) designing, manufacturing, exporting, importing, distributing, marketing, and selling a pressure cooker that claimed on its box the lid could not be opened when under pressure, when in fact it could; and Defendant knew that it could;

d) manufacturing, exporting, importing, distributing, marketing, and selling a pressure cooker that claimed the lid could not be opened when under pressure, when in fact testing had proven that statement was in fact not true;

e) manufacturing, exporting, importing, distributing, marketing, and selling a pressure cooker that claimed the lid could not be opened when under pressure, when in fact was not designed with devices that prevented the lid from being opened;

f) continuing to manufacture, export, import, distribute, market, and sell a pressure cooker that claimed the lid could not be opened when under pressure, when it had notice from consumers of injury having been caused by the lid having been opened when under pressure; and,

g) not conducting inspection, sampling, or testing of products it was accepting from a manufacturer in China to assure that the quality

of the products it received conformed with Defendant's standards.

225.   The willful and wanton conduct of Defendant was conduct purposefully committed which Defendant must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly Plaintiffs and their minor daughter, A. S.

226.   To this day Defendant has continued its conduct and behavior, as set forth in this civil action, in a willful and wanton manner, against other persons who have these defective Instant Pots®.

## DAMAGES FOR ALL CAUSES OF ACTION

227.   Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and for their damages for each cause of action further allege as follows:

228.   As a direct and proximate result of the failure of Defendant's Instant Pot® and the conduct, actions, inactions and omissions of Defendant, Plaintiffs John Smith and Lorrie Smith, individually, and as guardians and next friends of their minor daughter A. S., have sustained injuries and damages, which total in excess of $75,000, exclusive of interest and costs, including, but not limited to:

  a)  serious and permanent burns and physical injuries to Plaintiff Lorrie Smith and to A. S.;

  b)  past and future pain, suffering, and anguish, both in mind and in body suffered by Plaintiff Lorrie Smith and A. S.;

c)  physical disability, past and future, suffered by Plaintiff Lorrie Smith and A. S.;

d)  physical impairment suffered by Plaintiff Lorrie Smith and A. S.;

e)  disfigurement suffered by Plaintiff Lorrie Smith and A. S.;

f)  loss of enjoyment of life, suffered by Plaintiff Lorrie Smith and A. S.;

g)  past medical bills associated with the care and treatment of Plaintiff Lorrie Smith and A. S.;

h)  future medical bills and expenses to be incurred by Plaintiff Lorrie Smith;

i)  future medical bills and expenses to be incurred by Plaintiffs John Smith and Lorrie Smith for the care and treatment of A. S. during the remainder of the minority of A. S.;

j)  future medical bills and expenses to be incurred by A. S. after she becomes an adult;

k)  exemplary damages in the maximum amount allowed by Colorado law;

l)  such other damages as may be allowed by Colorado law, and supported by the evidence; and,

m) attorneys' fees and the costs and expenses of litigation as may be permitted by Colorado law and the rules of this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Smith and Plaintiff Lorrie Smith, individually, and as guardians and next friends of their minor daughter, A. S., each demand judgment against Defendant Instant Brands, Inc., in an amount of compensatory damages to be determined by a jury, in excess of $75,000, exclusive of interest and costs, plus prejudgment interest, post-judgment interest, and taxable cost, exemplary damages in the maximum amount allowed by Colorado law, and any and all other relief available under the law to fully compensate them for their injuries and damages.

## PLAINTIFFS DEMAND A TRIAL BY JURY

Respectfully submitted this 29th day of January 2021.

s/ *George E. McLaughlin*
George E. McLaughlin, # 16364
McLaughlin Law Firm, P.C.
1890 Gaylord Street
Denver, CO 80206-1211
720-420-9800
GEM@McLLF.com

David W. Hannum, # 48985
Jon M. Topolewski, # 52318
Robinson & Henry, P.C.
1975 Research Parkway, Suite 100
Colorado Springs, CO80920
303-688-0944
Jon@RobinsonAndHenry.com
David@RobonsonAndHenry.com